**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDY STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01597-TWP-MKK |
| | ) | |
| INDIANA DEPARTMENT OF CORRECTION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (Filing No. 44) filed by Defendant Indiana Department of Correction ("IDOC"). After she was terminated from her employment with IDOC, Plaintiff Judy Stewart ("Stewart") initiated this action alleging Age Discrimination and Sex Discrimination (Filing No. 1). For the reasons discussed below, IDOC's summary judgment motion is **granted**.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Stewart as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Stewart was a 72-year-old female at the time she initiated this action (Filing No. 1 at 2). IDOC is a state agency. On April 26, 1999 Stewart was hired by IDOC as a corrections officer at the Correctional Industrial Control Facility ("CICF"), located in Pendleton, Indiana. *Id*. Stewart remained in this position until her termination on October 31, 2023 (Filing No. 45-1 at 9:22–10:4).

IDOC followed the state of Indiana's drug testing policy for state employees (*see* Filing No. 54-1). Under the policy, Stewart's position was a Testing Designated Position for which random drug tests were allowed (Filing No. 45-1 at 35:7–14). A pool of random employees within the Testing Designated Positions are selected for drug testing each quarter (Filing No. 54-1 at 8). Under the policy, an employee's refusal to be tested or a positive test for a prohibited substance—including marijuana and cannabinoids—may lead to termination. However, the policy allows an employee who has tested positive to request that their sample be "split" and retested within 72 hours of the positive result. *Id*. at 12. Stewart acknowledged this policy by signing it on June 20, 2019. (Filing No. 45-1 at 36:8–18).

On October 23, 2023, Stewart and three other CICF employees, two men and another woman, were tested as part of the fourth quarter testing pool. *Id*. at 36:24–37:3. Stewart learned in a telephone call from a medical review officer at the testing agency that she had tested positive for cannabinoids and was told that they would have to report it to her employer. *Id*. at 38:2–6. Stewart then called CIF and learned that she had been "gate closed,"[1] which marks the beginning of the termination process. *Id*. at 38:9–40:2. Stewart was not provided a reason for why she was being "gate closed." *Id*. at 39:17-22.

Stewart later tested negative for marijuana after voluntarily undergoing a hair-follicle drug screen, which can detect the presence of drugs for a period of 90 days or more, though she did not provide these results to IDOC (Filing No. 45-1 at 47:24–49:13). Stewart was terminated on October 31, 2023, but was never provided a reason for her termination from IDOC. *Id*. at 38:19–25. On September 22, 224 Stewart filed the instant Complaint alleging Court I: Age Discrimination

---

[1] According to Stewart, "gate closed" means an employee cannot go back into that facility.(Filing No. 45-1 at 38).

in violation of the Age Discrimination in Employment Act of 1967; and Count II: Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964.

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Stewart argues that IDOC discriminated against her because of her age and sex when it departed from its policy and did not provide her with a copy of her drug test results, nor did it allow her the option to "split" and retest her sample. (Filing No. 53). IDOC contends that it is entitled to summary judgment because it enjoys Eleventh Amendment immunity on Stewart's ADEA claim, and Stewart cannot make a prima facia case on her sex discrimination claim.

At the outset, Stewart acknowledges that her age discrimination claim is barred by the Eleventh Amendment, and she does not oppose the summary judgment motion as to Count I. Accordingly, IDOC's Motion for Summary Judgment is **granted** as to Count I: Age Discrimination in Violation of the ADEA.

In her remaining claim, Count II, Stewart alleges that she was discriminated against on the basis of her sex, female (Filing No. 1 at 4–5). Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may prove discrimination under Title VII by using either the direct method or the indirect, burden shifting method. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Regardless of how one chooses to proceed, at summary judgment, courts determining whether discrimination under Title VII occurred ask whether the evidence "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834

4

F.3d 760, 765 (7th Cir. 2016). This evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Id*.

Under the direct method, a plaintiff must offer direct or circumstantial evidence that supports an inference of intentional discrimination. Direct evidence requires "an admission of discriminatory intent." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Circumstantial evidence can include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Alexander*, 739 F.3d at 979. The evidence "must point directly to a discriminatory reason for the employer's action . . . and be directly related to the employment decision." *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013).

Under the indirect method, courts utilize the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Courts employ this burden-shifting analysis as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under the familiar *McDonnell Douglas* burden-shifting method, a plaintiff must first prove (1) that she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *Fane v. Locke Reynolds LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If the plaintiff demonstrates these elements, "the burden shifts to the employer to come

forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

Here, both parties utilize the *McDonnel Douglas* burden-shifting framework to organize their arguments, and the Court will address Stewart's claims in accordance with such framework. IDOC does not dispute the first three elements and admits that Stewart is a member of a protected class, female; she met IDOC's legitimate expectations; and Stewart suffered an adverse employment action because she was terminated (Filing No. 46 at 9). But IDOC argues that Stewart cannot meet the fourth element, as she cannot show that similarly situated employees outside her protected class were treated more favorably.

IDOC argues persuasively that Stewart must identify male correctional officers who failed their random drug tests but were not terminated for doing so, which she did not do. While Stewart claimed in her interrogatory responses that Officers Foster, Smith, and Vern would be her comparators, she testified that she is unable to identify any male correctional officers who tested positive but were not terminated. *Id*. In her response brief, Stewart's sole contention is that the state drug policy that IDOC follows provides that the employee is notified within 72 hours of a positive test and is given the opportunity to request the "split" portion of their specimen be tested at a different laboratory (Filing No. 53 at 8). She argues that IDOC did not follow this policy because it "did not provide her with a copy of her test results, did not notify her of her rights following a positive test, and did not afford her the opportunity to request a split-sample retest, as required by policy." *Id*. Stewart asserts that IDOC has followed the policy in the past for male employees but chose not to for her.

In its reply brief, IDOC argues that even if deviations from a drug testing policy counted as adverse employment actions or legitimate employment expectations—which they don't—IDOC followed the policy (Filing No. 57 at 6).  IDOC argues the policy only requires notification of a positive result, which Stewart admits occurred as she received notification via a telephone call from the Medical Review Officer informing her of the positive test.  IDOC contends that it notified Stewart of her rights when it required her to read and sign the policy indicating her understanding and consent to it. (Filing No. 57 at 7). IDOC finally asserts that the policy merely requires that it allow an employee to request the split sample test, but it does not require IDOC to proactively seek such retesting in the absence of a request from the employee. IDOC is correct.

Stewart's argument is that she was discriminated against on the basis of sex because IDOC failed to follow its drug policy in connection with her positive test result and subsequent termination even though it has followed the policy in the past with other male correctional officers. Stewart's assertions fail on two grounds. While she makes the assertion that "[IDOC] has followed [its] policy in the past for male employees, however adversely declined to allow [Stewart] to be notified of and retest her results[,]" this assertion is not supported with evidence, and Stewart does not identify the male employees whom IDOC supposedly allowed to retest their positive results and were not terminated. Thus, because it is well established that mere conclusory assertions, unsupported by evidence, are not sufficient to defeat summary judgment, her claim fails. *See Dorsey*, 507 F.3d at 627.

Even if Stewart had identified other male employees whom IDOC followed the drug policy with, it also followed the policy with her, and she was not treated differently. The policy section Stewart claims IDOC violated states as follows:

> Within seventy-two (72) hours after an employee is notified of a positive, adulterated or substituted test result for a controlled substance, he/she may request

that the "split" portion of his/her specimen be tested at a different SAMHSA laboratory. If the employee makes a request within seventy-two (72) hours to the [Medical Review Officer] for the split portion to be tested, the [Medical Review Officer] shall immediately arrange with the laboratory for all procedures to be performed in accordance with split specimen testing procedures. The cost of a split specimen test will be the responsibility of the employee; however, the test of the split specimen shall not be conditioned upon up-front payment.

(Filing No. 54-1 at 12). Stewart's contentions that IDOC violated the policy by not providing her with a copy of her test results, not notifying her of her rights following a positive test, and not affording her the opportunity to request a split-sample retest are not supported by the evidence.

By her own admission, Stewart was aware of the policy, which she signed in 2019, and thereafter was notified by the Medical Review Officer of her positive test (Filing No. 45-1 at 36:8–18, 38:2–6). And there is no evidence that Stewart ever requested that her specimen be retested. Indeed, the only evidence in the record concerning Stewart's disagreement with the positive test is that she voluntarily performed a later hair-follicle test which was negative for marijuana, but admits that she never presented her independent test results to IDOC. *Id*. at 47:24–49:1.

While Stewart may have disagreed with the result, she did not request that IDOC retest the "split" portion of her specimen, and the policy does not require that IDOC proactively do so absent a request by the employee. IDOC could not have violated the drug policy based on Stewart's failure to request retesting especially given that she signed the policy indicating that she understood and consented to it. Accordingly, even if Stewart had identified comparators, which she did not, she has not designated evidence to show that she was not treated differently based on her sex, nor has she presented any evidence to show pretext. Stewart's Title VII discrimination claim fails, and IDOC's Motion for Summary Judgment is therefore **granted.**

8

## IV.    CONCLUSION

For the reasons discussed above, IDOC's Motion for Summary Judgment (Filing No. 44) is **GRANTED**. Both of Stewart's claims alleged in her Complaint, Count I: Age Discrimination in violation of the ADEA and Count II: Sex Discrimination in Violation of Title VII, are **dismissed with prejudice**.

Final judgment shall issue separately.

**SO ORDERED**.

Date:    5/26/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Gerardo Alvarez
Employment Law Office of John H Haskin & Assoc LLC
galvarez@jhaskinlaw.com

Serena Elisa Alway
Office of Indiana Attorney General
serena.alway@atg.in.gov

Timothy A. Dowers
John H. Haskin & Associates
tdowers@jhaskinlaw.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

9